UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                                :
PAMELLA F. KOUNS,                               :
                                                :      CASE NO. 1:10-CV-00750
                    Plaintiff,                  :
                                                :
vs.                                             :      OPINION & ORDER
                                                :      [Resolving Doc. Nos. 22, 23]
HARTFORD LIFE AND ACCIDENT                      :
INSURANCE COMPANY, *et al.*                     :
                                                :
                    Defendants.                 :
                                                :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this employee benefits case, the parties file cross-motions for judgment on the administrative record. [Doc. 22; Doc. 23.] Both motions are opposed. [Doc. 24; Doc. 25.] The Defendants also seek judgment on their counter-claim. [Doc. 23.] For the foregoing reasons, the Court **GRANTS** the Plaintiff's motion and **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion.

## I. Background

As background in this ERISA case, Plaintiff Pamela F. Kouns was employed as a customer sales representative at Quebecor World, located in Oberlin, Ohio, from April 14, 1999 to July 1, 2006. [Doc. 22 at 7; Doc. 23 at 2.] Her job duties included computer work, reading and printing documents, and managing projects. [Doc. 22 at 7; Doc. 23 at 2.] As part of her employment benefits, the Hartford Life and Accident Insurance Company ("Hartford") provided Kouns with long-

Case No. 1:10-CV-00750
Gwin, J.

term disability insurance.  [A.R. 00008-00033.]

On June 12, 2006, Kouns fell on her face and suffered a blowout orbital fracture of her left eye.  [Doc. 22 at 7; Doc. 23 at 2.]  As a result of that injury, Kouns suffered from double and blurred vision, and on June 30, 2006 she stopped working at Quebecor.  [Doc. 22 at 8; Doc. 23 at 2.]  On July 12, 2006, Kouns underwent surgery in an attempt to repair the fracture, but her vision continued to be blurred.  [Doc. 22 at 8; Doc. 23 at 2.]  Kouns also obtained prism lens to help correct her double vision, but she continued to have blurred vision.  [Doc. 22 at 8.]  Kouns was unable to drive, was light sensitive, became ill when attempting to draw, and could not read or watch television.  [Doc. 22 at 8.]  During this time, Kouns received medical treatment from Dr. Joseph Ross, an ophthalmologist.  [A.R. 00345.]

Kouns applied to Hartford for long-term disability benefits, which Hartford approved on February 6, 2007.  [A.R. 00149.][1] Laura Savageua, Hartford's examiner, noted that as a result of Kouns's injuries, Kouns "continued to have double vision" and concluded that based on her condition and her age that "[Kouns] wouldn't be able to do her job duties which requires working

---

[1]  Under the disability insurance plan, an individual is disabled if he or she meets either the "Occupation Qualifier" or the "Earnings Qualifier."  [A.R. 00079.] The occupation qualifier is defined as: "Disability means that during the Elimination Period and the following 12 months, Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:  1) continuously unable to perform the Material and Substantial Duties of Your Regular Occupation; and 2) not Gainfully Employed."  After the LTD Monthly Benefit has been payable for 12 months, Disability means that Injury or Sickness causes physical or mental impairment to such a degree of severity that You are: 1) continuously unable to engage in any occupation for which You are or become qualified by education, training or experience; and 2) not Gainfully Employed."  [A.R. 00068.]  The earnings qualifier is defined as:  "You may be considered Disabled during and after the Elimination Period in any month in which You are Gainfully Employed, if an Injury or Sickness is causing physical or mental impairment to such a degree of severity that You are unable to earn more than 80% of Your Monthly Earnings in any occupation for which You are qualified by education, training or experience. On each anniversary of Your Disability, We will increase the Monthly Earnings by the lesser of the current annual percentage increase in CPI-W, or 10%.  You are not considered to be Disabled if You are able to earn more than 80% of Your Monthly Earnings.  Salary, wages, partnership or proprietorship draw, commissions, bonuses, or similar pay, and any other income You receive or are entitled to receive will be included.  Sick pay and salary continuance payments will not be included.  Any lump sum payment will be prorated, based on the time over which it accrued or the period for which it was paid."  [Id.]

Case No. 1:10-CV-00750
Gwin, J.

on a computer [and] [i]t is unlikely that [she] would be able to participate in gainful employment."

[A.R. 00118.]

However, in April 2009, Hartford received an Attending Physician's Statement from Dr. Kaster, an optometrist who examined Kouns on March 11, 2009.  [A.R. 00306; Doc. 22 at 8.]  Dr. Kaster is associated with Koun's normal ophthalmologist, Dr. Ross, who was unable to see Kouns on that day.  [A.R. 00345.]  Dr. Kaster diagnosed Kouns with cataracts and double vision, that he said could be corrected with new glasses.  [Doc. 22 at 8.]  According to Dr. Kaster, Koun's best corrected vision for her right eye was 20/30 and was 20/25 for her left eye.  [Id. at 9.]  In his report, Dr. Kaster further stated that Kouns was capable of participating in vocational rehabilitation and listed no restriction on Kouns's ability to drive.  [Id. at 9.]  Upon receiving Dr. Kaster's report, Hartford conducted an Employability Analysis Review.  [A.R. 00361; Doc. 22 at 9.]  This review concluded that Kouns could be employed as a claims clerk II, traffic clerk, referral clerk for a temporary help agency, or routing clerk.  [Id.]  Based on that review and upon Dr. Kaster's report, on April 22, 2009, Hartford stopped Kouns' long-term disability benefits.  [Id.; Doc. 23 at 2.]

After learning of the termination of her benefits, Plaintiff Kouns visited Dr. Kaster again. Dr. Kaster reexamined the Plaintiff, and on May 1, 2009, he wrote a letter to Hartford amending his earlier diagnosis.  [Doc. 22 at 10.]  In this letter, Dr. Kaster wrote that Kouns suffered from intermittent binocular diplopia (double vision) in certain gazes, likely caused by her blowout orbital fracture, and persistent monocular diplopia, which was likely caused by cataracts unrelated to her injury.  [Id.]  He noted that the double vision was "not apparent in the initial examination . . . [and that] I do not feel she has clear and comfortable vision with glasses."  [A.R. 00349; Doc. 22 at 11.] Dr. Kaster continued, saying that "[a]lthough I indicated otherwise on her Statement of Continued

Case No. 1:10-CV-00750
Gwin, J.

Disability, I now would hesitate to grant her an unrestricted driver's license knowing she has intermittent diplopia . . . [and] I'm not sure how well her visual function would hold up with prolonged near work and reading." [*Id.*]

On May 7, 2009, Kouns appealed her termination of disability benefits.  With her appeal, Kouns stated that her glasses gave her headaches and that she still suffered from double vision. [A.R. 00345.]  She stated that she could not drive due to her double vision and that she would not be able to undergo cataract surgery for a year.  [*Id.*]  Kouns additionally said that she would be unable to complete the jobs of claims clerk, traffic clerk, referral clerk, or routing clerk due to her diabetes, arthritis, and poor vision.  [*Id.*]  In support of her appeal, Kouns also submitted medical records from her treating physicians, Dr. Jennifer Wurst – her primary care physician – and Dr. Joseph Ross – her ophthalmologist. [Doc. 22 at 12.]

In reviewing the appeal, Hartford submitted Kouns's file to Dr. Timothy You, an ophthalmologist, for an independent medical review.  [*Id.* at 13.]  In his report, Dr. You states that he reviewed Kouns's medical records and that he also communicated with Dr. Kaster regarding Kouns.  [A.R. 00228.]  Dr. You also attempted to contact Dr. Ross, but was unable to do so successfully.  [*Id.*]  Based on his review of Kouns's records, Dr. You concludes that Kouns could read and do close work, including computer work, and that she could perform work requiring a "medium physical demand." [A.R. 00230.]  Dr. You also states in his report that he disagrees with Dr. Kaster's most recent assessment of Kouns's vision and ability to perform work.  [*Id.*] Specifically, Dr. You stated that he believed that Kouns was not totally disabled and that he believed that much of her double vision could be corrected by corrective lens and surgery for her cataracts, although she was currently unwilling to have the surgery.  He also stated that he agreed with the

-4-

Case No. 1:10-CV-00750
Gwin, J.

diagnosis that Kouns's blowout orbital fracture contributed to her double vision and that Kouns should not receive an unrestricted driver's license.  [A.R. 00231.]

Hartford also had Kouns's file reviewed a second time – this time by Dr. Darrin Campo, an internist.  [*Id.*]  Dr. Campo reviewed all of Kouns's medical records and he also spoke with Dr. Wurst and Dr. You.  [*Id.*]  During his discussion with Dr. Wurst, Wurst stated that the claimant did not have any functional limitations related to hypertension, diabetes, or hyperlipidema.  [*Id.*]  Dr. Campo concluded that Kouns was functional at any level and was not disabled.  [A.R. 00233.]

Based upon these reports, on July 24, 2009, Hartford upheld its decision to terminate Kouns's long-term disability benefits.  [A.R. 00130-00133.]  In the letter explaining the termination, appeal specialist Debra McGee briefly reviewed the medical records sent by Dr. Ross, Dr. Kaster, and Dr. Wurst.  [*Id.*]  She also summarized the opinions of Dr. You and Dr. Campo, which both indicated that Kouns was not disabled.  McGee concluded that Kouns was not fully disabled and that the earlier decision to terminate Kouns's benefits was correct.  [*Id.*]

However, on October 20, 2009, the Social Security Administration issued Kouns a fully favorable decision, finding her disabled, and on January 12, 2010, Kouns began receiving disability benefits.  [A.R. 00211.]  Kouns was awarded $906 per month, retroactive to December 1, 2006, with an earnings increased to $943 effective on January 1, 2007, and another increase to $946 effective January 1, 2008.  [Doc. 22 at 15.]  Hartford's disability insurance plan provides that Social Security payments are deductible from any award of disability payments.  [A.R. 00017.]  Additionally, on April 20, 2007, Kouns executed an agreement with Hartford, in which she agreed to refund any long-term disability overpayments.  [A.R. 00408.]  Hartford has twice demanded $26,221.89 for alleged overpayment during the period in which Kouns received long-term disability benefits as well as

Case No. 1:10-CV-00750
Gwin, J.

retroactive Social Security payments.  [A.R. 00123-00127.]  Kouns has not yet made any

reimbursement payments to Hartford.  [Doc. 22 at 15.]

On April 12, 2010, Plaintiff Kouns filed the current action, alleging that Hartford erroneously

denied her long-term disability benefits under her insurance plan and that Hartford's review was

arbitrary and capricious.  [Doc. 1; Doc. 15.]  The Plaintiff seeks an order requiring (1) the

Defendants to pay all accrued and unpaid disability benefits and (2) requiring that the Defendants

designate the Plaintiff an eligible participant under the long-term disability benefits plan.  [Doc. 15.]

On June 10, 2010, the Defendant Hartford filed a counterclaim, seeking a repayment of the

$26,221,89 allegedly overpaid to Kouns under the long-term disability plan.  [Doc. 5.]  On

November 1, 2010, the parties filed cross-motions for judgment on the administrative record.  [Doc.

22; Doc. 23.]  The Defendant also seeks judgment on the record on its counterclaim for alleged

overpayments.  [Doc. 22.]

## II. Legal Standard

A court reviewing an administrator's decision under a benefit plan subject to the Employee

Retirement Income Security Act of 1974 ("ERISA") will apply a *de novo* standard of review unless

the administrator possessed discretionary authority to determine benefit eligibility or construe the

terms of the plan.  *McDonald v. Western-Southern Life Ins. Co.* 347 F.3d 161, 168 (6th Cir. 2003).

Where the administrator has such authority, a court reviews a decision regarding coverage under an

"arbitrary and capricious" standard of review.  *Conkright v. Frommert*, 130 S. Ct. 1640, 1651 (2010);

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).  The long-term disability benefits plan

at issue in this suit provides that the plan administrator has the sole discretionary authority to

Hartford to determine eligibility for benefits and to interpret the terms and provisions of the plan,

Case No. 1:10-CV-00750
Gwin, J.

and thus, the proper standard of review is whether Hartford's decision was arbitrary and capricious.

[A.R. 00081.]²/

     The arbitrary and capricious  standard is the least demanding form of judicial review of an administrative decision. *Williams v. International Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). A decision regarding eligibility for benefits is not arbitrary and capricious if the decision "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Balmert v. Reliance Standard Life Insurance Co.*, 594 F.3d 496, 500 (6th Cir. 2010). Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotations and citation omitted); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir.1998) (en banc). In applying the arbitrary and capricious standard in ERISA actions, a court is limited to reviewing the evidence contained within the administrative record. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).

     A court should utilize the arbitrary and capricious standard even when a conflict of interest exists. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). The Supreme Court has held that a conflict of interest exists for ERISA purposes where the plan administrator evaluates and pays benefit claims, even where the administrator is an insurance company and not the beneficiary's employer. *Glenn*, 554 U.S. at 111. Courts will weigh a potential conflict of interest as a factor in

---

     ²/ "The Policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable, by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto. The plan administrator and other plan fiduciaries have discretionary authority to determine Your eligibility for and entitlement to benefits under the Policy. The plan administrator has delegated sole discretionary authority to CNA Group Life Assurance Company to determine Your eligibility for benefits and to interpret the terms and provisions of the plan and any policy issues in connection with it." [A.R. 00081.]

Case No. 1:10-CV-00750
Gwin, J.

determining whether the decision to deny benefits was arbitrary and capricious.  *Glenn*, 554 U.S. at

117; *Firestone*, 489 U.S. at 115.

### III. Analysis

*III.A  Termination of Disability Benefits*

In supporting its motion for judgment on the administrative record, the Defendants say that

Hartford's decision to terminate the Plaintiff's claim for benefits was not arbitrary and capricious

because it was based upon substantial evidence and resulted from a deliberate and principled

reasoning process.  [Doc. 22 at 15.]  In support of her cross-motion for judgment on the record, the

Plaintiff says that Hartford's decision to terminate her benefits was arbitrary and capricious because,

first, Hartford inappropriately relied upon the opinion of an independent medical reviewer, Dr. You;

second, because Hartford did not consider the Plaintiff's favorable Social Security Administration

decision; and third, because the jobs listed in the employability analysis used by Hartford did not

take the Plaintiff's actual medical condition into account.  [Doc. 23; Doc. 24.]

As a preliminary matter, the Court finds that a conflict of interest exists in this suit, since

Hartford's plan administrator holds the dual role of decision maker and payer of benefits.  [A.R.

00081.]  However, "mere allegations of the existence of a structural conflict of interest are not

enough for the court to reject a plan administrator's denial of benefits where there is substantial

evidence in the administrative record that supports his or her decision; there must be some evidence

that the alleged conflict of interest actually affected the plan administrator's decision to deny

benefits."  *Lanier v. Metro. Life Ins. Co.*, 692 F. Supp. 2d 775, 786 (E.D. Mich. 2010) (citing *Peruzzi

v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998)).  Here, no evidence was submitted showing

that the conflict affected Hartford's decision.  Nonetheless, as the effects of such a conflict are

-8-

Case No. 1:10-CV-00750
Gwin, J.

exceedingly difficult – if not impossible – to prove, the Court will continued to weigh this conflict

as a factor against Hartford when determining whether Hartford's decision to terminate long-term

disability benefits was arbitrary and capricious. *See Glenn*, 554 U.S. at 117.

    i. Reliance on the Opinion of Dr. You

     In support of her motion for judgment on the administrative record, the Plaintiff first says that

Defendant Hartford inappropriately relied upon the opinion of Dr. You, the independent medical

reviewer, over the opinion of her treating optometrist, Dr. Kaster. [Doc. 24 at 2-4.] Similarly, the

Plaintiff also argues that it was unreasonable for Hartford to rely upon the opinion of Dr. You, since

Dr. You conducted a paper review of Kouns's record, whereas Dr. Kaster examined Kouns in

person. [*Id.*] The Plaintiff also takes issue with the opinion of Dr. You, stating that his conclusions

are not reasonable since the Plaintiff's diplopia entirely prevents her from obtaining employment.

[*Id.* at 4.] Finally, the Plaintiff suggests that Dr. You provided a biased opinion, since he is regularly

retained and paid by Hartford for independent medical reviews. [*Id.* at 3.]

     First, the Court notes that the Plaintiff's argument that Hartford should not have relied upon

the opinions of Dr. You at all, since he only conducted a file review, is not correct. Rather, an

insurance company may validly rely upon the opinions of non-treating physicians who review only

paper records. *Evans v. Unumprovident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006); *Calvert v. Firstar

Fin., Inc.*, 409 F.3d 286, 293 (6th Cir. 2005). Moreover, unlike in the Social Security context, where

deference to a treating physician is mandatory, in the ERISA context the Supreme Court held that

"plan administrators are not obliged to accord special deference to the opinions of treating

physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). Plan

administrators are generally entitled to rely on the opinion of one doctor over that of another in

Case No. 1:10-CV-00750
Gwin, J.

determining whether benefits should be awarded.  *Evans v. Unumprovident Corp.*, 434 F.3d at 877.

"Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over

that of another . . . the plan administrator's decision cannot be said to have been arbitrary  and

capricious."  *McDonald*, 347 F.3d at 169.  Nonetheless, although Hartford was free to consider and

rely upon the opinion of Dr. You, it was not free to disregard Dr. Kaster's opinions without a

reasoned explanation.  *See Black & Decker*, 538 U.S. at 834.  Thus, in deciding whether Hartford

acted arbitrarily and capriciously in crediting the opinion of Dr. You over the opinion of Dr. Kaster,

the Court must determine if Hartford gave adequate consideration to Dr. Kaster's medical opinion.

After closely reviewing the reports of both Dr. Kaster and Dr. You, as well as the final

appeals decision issued by Hartford on July 24, 2009, the Court finds that Hartford did not offer a

reasoned explanation for its decision to reject the opinion of Dr. Kaster.  Based upon Dr. Kaster's

examination, Dr. You concluded that Plaintiff Kouns suffered from intermittent binocular diplopia

(double vision) in certain gazes, likely caused by her blowout orbital fracture, and persistent

monocular diplopia, caused by her advancing cataracts.  [A.R. 00231.]  Also consistent with Dr.

Kaster, Dr. You concluded that the Plaintiff's monocular dilplopia could be corrected through

surgery.  [A.R. 00230.]

Despite agreeing in some areaas, Dr. Kaster and Dr. You diverge on the issue of whether the

Plaintiff's binocular diplopia could be corrected through the use of corrective lens.  Dr. Kaster

initially found that Kouns's intermittent binocular diplopia could be corrected through use of prism

lens.  [A.R. 00349.]  However, upon reexamining the Plaintiff, he retreated from that diagnosis in

his amended opinion, writing that Kouns did not have comfortable vision, even while using

corrective lenses.  [*Id.*]  In his final report, Dr. Kaster concluded that Kouns does not have "clear

-10-

Case No. 1:10-CV-00750
Gwin, J.

and comfortable vision with glasses . . ." and that he wasn't "sure how well her visual function would hold up with prolonged near work and reading." [*Id.*]    He stated that he found that the Plaintiff's vision had not improved when using corrective lenses and that the Plaintiff suffered from double vision even when using the corrective lenses. [A.R. 00348-49.]

By contrast, in his report, Dr. You concluded that the Plaintiff's binocular diplopia could be corrected through use of prism lenses. [A.R. 00230.] Based on this conclusion, he states that the Plaintiff was not disabled because her vision problems were mostly correctable. [*Id.*] In forming his opinion, Dr. You relied upon Dr. Kaster's original diagnosis from March 2009, in which Dr. Kaster stated that the intermittent binocular diplopia was "correctable with spectacles." [*Id.*] But, as previously discussed, in his amended report Dr. Kaster stated that this diagnosis was not accurate and that spectacles did not correct Kouns's binocular diplopia. [A.R. 00349.] Dr. You sets forth no basis for relying upon a repudiated and older diagnosis, rather than the one most recently submitted by Dr. Kaster to Hartford. [A.R. 00230.]    Dr. You did not examine the Plaintiff and the record suggests that he arbitrarily rejected the more recent diagnosis.

Although Hartford was free to rely upon the opinion of a non-treating physician – here Dr. You – but Dr. You gives no explanation for how his review of Kouns's paper file enabled him to discount a more recent diagnosis by a treating physician in favor of an older diagnosis that the treating physician since retracted as inaccurate. Thus, this lack of reasoned explanation in Dr. You's opinion weighs heavily in favor of finding that Defendant Hartford acted unreasonably in crediting Dr. You's opinion over that of Dr. Kaster. *See Black & Decker*, 538 U.S. at 834 ("Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician"); *Calvert*, 409 F.3d at 293 ("a plan administrator may not

-11-

Case No. 1:10-CV-00750
Gwin, J.

arbitrarily disregard the medical evidence proffered by the claimant, including the opinions of her treating physicians"); *Glenn v. MetLife (Metro. Life Ins. Co.)*, 461 F.3d 660, 671 (6th Cir. 2006) (holding that lack of consideration of relevant evidence from treating physician weights heavily in favor of finding administrator's decision arbitrary and capricious).  Indeed, when faced with this inconsistency in the medical opinions, Hartford could easily have arranged for another doctor to examine the Plaintiff as a means of resolving the conflict.  *Glenn*, 461 F.3d at 671 (decision to resolve conflict through file review rather than examination is relevant factor in deciding if administrator decision is arbitrary and capricious); *Calvert*, 409 F.3d at 295 ("while we find that . . . reliance on a file review does not, standing alone, require the conclusion that [the insurer] acted improperly, we find that the failure to conduct a physical examination – especially where the right to do so is specifically reserved in the plan -  may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination").  However, instead of conducting a physical examination, Hartford simply accepted the questionable opinion with almost no discussion or explanation.  [A.R. 00221.]<sup>3/</sup>

Further, since Dr. You's opinion regarding the Plaintiff's vision is based upon a medical report that was superseded by a later diagnosis, his conclusions about the Plaintiff's ability to perform job-related tasks – which are based upon unsupported medical conclusions – are also suspect.  Dr. Kaster concluded that he was "not sure how well [Kouns's] visual function would hold up with prolonged near work and reading."  [A.R. 00349.]  Dr. You stated that he disagreed with Dr. Kaster's conclusions regarding Kouns's functional abilities, saying that he believed that Kouns could perform visually intense activities if she used an eyepatch, took frequent breaks, and used a large

---

[3/] Under the terms of the insurance plan, Hartford could require that the Plaintiff be re-examined by another doctor.  [A.R. 00023.]

-12-

Case No. 1:10-CV-00750
Gwin, J.

monitor. [A.R. 00230.] Hartford relied upon Dr. You's conclusion on this point in concluding that the Plaintiff was not disabled, and the Court finds that Defendant Hartford did not act reasonably in relying upon Dr. You's determination of Kouns's functional abilities when it was clear that conclusion was not based upon her current medical condition.

Finally, the Court also considers whether Dr. You's opinion should be discounted since he was retained by Hartford to provide the independent medical review. [Doc. 24 at 3.] Although Dr. You is not an employee of Hartford, "the Supreme Court has 'acknowledged that physicians repeatedly retained by benefits plans may have an incentive to make a finding of not disabled in order to save their employers' money and preserve their own consulting arrangements.'" *Kalish v. Liberty Mutual/Liberty Life Assur. Co.,* 419 F.3d 501, 508 (6th Cir. 2005) (quoting *Black & Decker,* 538 U.S. at 832).  Like a conflict of interest, proving that a financial bias colored or affected a conclusion is quite difficult to prove.  Although the Plaintiff proffers no concrete evidence that Dr. You's conclusions were altered due to this financial incentive, You's apparent financial interest raises some question regarding his opinion and is some factor in this Court's final determination if Hartford acted arbitrarily and capriciously.

As a whole, the Court finds that Hartford has not offered a reasoned explanation, based upon the evidence, for its decision to credit the opinion of Dr. You.  Rather, on the most crucial point at issue – whether the Plaintiff's binocular diplopia could be corrected through use of lenses – Dr. You relied upon an older diagnosis that had been disavowed as inaccurate by Dr. Kaster, the treating physician.  Dr. You offered no reason for crediting this old diagnosis and Hartford did not explain how it could reasonably accept a diagnosis based upon old medical records over a more current in-person diagnosis.  Thus, the Court finds that Harford's reliance on Dr. You's report, which found

-13-

Case No. 1:10-CV-00750
Gwin, J.

that the Plaintiff was not disabled, was unreasonable.

    ii.  <u>Employability Analysis</u>

    Plaintiff Kouns also challenges Hartford's reliance upon an employability analysis, saying that "[t]here is no indication on the record that Plaintiff is qualified through education, training, or experience to perform any of the[ ] jobs" that were listed by Hartford as potential occupations for Kouns in the final decision rejecting the appeal. [Doc. 24 at 4.]   In making its final decision on Kouns's appeal, Hartford utilized a April 2009 employability analysis. [A.R. 00223.] This analysis concluded that Kouns could be employed as a claims clerk II, traffic clerk, referral clerk for a temporary help agency, or routing clerk. [A.R. 00361.] The employability analysis, like the opinion of Dr. You, is questionable.  The analysis was conducted prior to Dr. Kaster's amended medical opinion and did not take that later diagnosis into account.  Indeed, the analysis reduced Kouns's functional categories related to her visual abilities from an "constantly" to "frequently." [A.R. 00364.] Although according to the occupation job titles dictionary all of the potential jobs selected by Hartford for Kouns require low-level visual skills, the Court is troubled by the fact that Hartford based in its final decision on an employability analysis that was never updated to include accurate medical information.  Although not dispositive, this is a factor the Court considers in determining if Defendant Hartford's decision to terminate Plaintiff Kouns's benefits was arbitrary and capricious.

    iii.  <u>Consideration of Social Security Administration Decision</u>

    Finally, the Plaintiff says that Hartford's decision to terminate her disability benefits was arbitrary and capricious because Hartford did not take the results of her Social Security Administration decision into account. [Doc. 23 at 3-6.] Plaintiff Kouns argues that since Hartford provided a Social Security advocate to help her apply for benefits, that Hartford therefore acted

Case No. 1:10-CV-00750
Gwin, J.

arbitrarily and capriciously by not considering the Social Security decision when determining if she was disabled.  [*Id.*]  The Defendant says that it could not have considered the Social Security Administration's decision because that decision was made after it affirmed the termination of Kouns's long-term disability benefits.  Hartford also argues that the Court should not consider the Social Security Administration decision since it is not part of the administrative record.  [Doc. 25 at 1-4.] In response, Plaintiff Kouns also suggests that Defendant Hartford intentionally processed her claim quickly so it could deny her benefits without having to consider the results of the upcoming Social Security Administration decision.  [Doc. 23 at 6.]

Under the terms of the disability insurance plan, Hartford possessed the right to deduct any Social Security Administration award from the amount payable to the Plaintiff as disability insurance.  [A.R. 00017.]  Additionally, under the terms of the contract, the Defendant also agreed to provide a Social Security advocate to aid the Plaintiff in obtaining Social Security when the Defendant determined that Social Security is appropriate.  [A.R. 00022.]  Kouns was initially awarded long-term disability benefits by Hartford on February 6, 2007.  [A.R. 00149.]  Hartford retained Allsup Inc. to aid the Plaintiff in filing a Social Security claim, which was filed on July 19, 2007.  [A.R. 00209.]  On July 24, 2009, this claim was still pending when Hartford upheld its decision to terminate Kouns's long-term disability benefits.  [A.R. 00130-00133.]  On October 20, 2009, the Social Security Administration issued Kouns a fully favorable decision and on January 12, 2010, Kouns began receiving disability benefits.  [A.R. 00211.]

The Sixth Circuit has held where the Social Security Administration determines that an applicant is disabled, that a failure to consider that determination is a factor weighing in favor of finding an insurer's denial of coverage is arbitrary and capricious.  *Bennett v. Kemper Nat'l Svcs.,*

Case No. 1:10-CV-00750
Gwin, J.

*Inc.*, 514 F.3d 547, 553 (6th Cir. 2008); *Glenn*, 461 F.3d at 669; *Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516, 530 (6th Cir. 2003). Although the insurer is not bound by the Social Security Administration determination, *Seiser v. UNUM Provident Corp.*, 135 F. App'x 794, 799 (6th Cir. 2005), where a plan administrator (1) encourages an applicant to apply for Social Security disability payments, (2) financially benefits from the applicant's receipt of Social Security, and then (3) fails to explain why it is taking a position different from the Social Security Administration on the question of disability, a court reviewing that determination should weigh this in favor of a finding that a decision denying benefits was arbitrary and capricious. *Bennett*, 514 F.3d at 553. As elaborated by the Seventh Circuit in *Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir. 1998), and later adopted by the Sixth Circuit, the rationale for this factor is that it serves as a form of estoppel, reducing fraud by preventing the insurer from taking inconsistent positions in related proceedings. *Glenn*, 461 F.3d at 667-68. The prototypical example of this sort of behavior is a situation where an insurer advocates on behalf of an individual before the Social Security Administration with one hand, but then with the other hand attempts to deem the insured not disabled under the terms of the disability insurance.

These cases are not exactly on point here, although to some degree their underlying rationale is nonetheless applicable. Unlike in the cases cited by the Plaintiff, the Social Security Administration had not yet made a determination regarding the Plaintiff's disability status when Defendant Hartford found her not disabled. *See, e.g.*, *Morris v. AEP Long-Term Disability Plan*, 2010 WL 4244120, at *7 (6th Cir. Oct. 15, 2010) (Social Security Administration determination made prior to insurer determination); *Bennett*, 514 F.3d at 553 (same); *Glenn*, 461 F.3d (same). Although Hartford clearly could not have considered a Social Security Administration decision not

-16-

Case No. 1:10-CV-00750
Gwin, J.

yet made, it was aware of Kouns's Social Security application, encouraged and funded that application, and now seeks to receive credit for the retroactive Social Security benefits. Moreover, Hartford could easily have delayed making a decision on the Plaintiff's insurance claim while the Social Security claim proceeded, but chose not to, likely so that record would not need to be considered. Thus, the rationale of *Ladd* has some application here, as Hartford was taking inconsistent positions with regard to the Plaintiff – advocating that she was disabled to the Social Security Administration, while also determining that she was not disabled under the policy.

In a case presenting a similar set of facts, in *Quast v. Square D Co.*, 2003 WL 23415018 (S.D. Ohio Jul. 15, 2003), the court remanded the case to the administrator so the claimant's disability status could be reconsidered taking the Social Security Administration decision into account. The district court reasoned that a remand would allow the administrator to make a more thorough review that considered all of the relevant factors. *Id.* at *5. However, in *Seiser v. UNUM Provident Corp.*, 135 F. App'x 794 (6th Cir. 2005), the Sixth Circuit disfavored the *Quast* approach, and instead held that a remand is not permissible in those circumstances. *Id.* at 799. Additionally, in *Seiser*, the Sixth Circuit reaffirmed prior decisions holding that a "district court is strictly limited to the record of the administrator in its review," and further held that the a Social Security Administration decision issued sixth months after the insurer's decision could not be considered when determining if the insurer's decision as arbitrary and capricious. *Id.* Thus, although the Court believes that the rationale of *Bennett* and *Glenn* should allow it to weigh the Social Security action against Hartford, the Court is prevented from doing so. Therefore, the Court finds that the favorable Social Security Administration decision in October 2009 is not a relevant factor in determining whether Hartford acted arbitrarily and capriciously in terminating the Plaintiff's disability benefits.

Case No. 1:10-CV-00750
Gwin, J.

     iv.  <u>Conclusion</u>

After considering Defendant Hartford's decision, the Court finds that Hartford acted arbitrarily and capriciously in terminating the Plaintiff's benefits. Hartford's final decision was based primarily on the report of Dr. You. On the most crucial point, Dr. You's opinion relies upon an old and discredited diagnosis. Neither Dr. You nor Hartford offer an explanation for how they could reasonably rely upon this older diagnosis. Further, the analysis in the decision of methods the Plaintiff can use to minimize any ongoing visual problems is based upon an assumption that the Plaintiff's binocular diplopia was correctable with lenses. However, this conclusion is flatly contradicted by the diagnosis of Dr. Kaster, who concluded that the Plaintiff could not see comfortably after an in-person examination. The Court also notes that the employability analysis, which listed several potential careers for the Plaintiff, did not take Dr. Kaster's later diagnosis into account. Hartford never explains how an individual suffering from non-correctable double vision could be expected to perform these jobs. Finally, the Court also weighs the inherent conflict of interest present in this case, as Hartford holds the dual role of decision maker and payer of benefits. Thus, the Court finds that the decision did not result from a deliberate and principled reasoning process, was not supported by substantial evidence, and was not a reasonable interpretation of the plan. The Court therefore **GRANTS** the Plaintiff's motion for judgment on the administrative record and **DENIES** the Defendants' motion for judgment on the administrative record. The Court **ORDERS** that the Plaintiff be designated as fully disabled under the insurance plan and that all back benefits owed, plus interest, be paid to the Plaintiff.

     v.  <u>Attorney's Fees</u>

Plaintiff Kouns also requests an award of attorney's fees. [Doc. 23 at 7.] Under 29 U.S.C.

-18-

Case No. 1:10-CV-00750
Gwin, J.

§ 1132(g)(1), the Court may, "in its discretion . . . allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "The Sixth Circuit utilizes the . . . five-factor King test to assess whether a district court properly exercised its discretion in awarding fees: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions." *Moon v. Unum Provident Corp.*, 461 F.3d 639, 643 (6th Cir. 2006) (citing *Secretary of Dep't of Labor v. King*, 775 F.2d 666 (6th Cir. 1985)). No single factor in this test is determinative. *Moon*, 461 F.3d at 642-43. The Court will proceed through these factors to determine if Plaintiff Kouns is entitled to an award of attorney's fees.

On the first factor the Court finds that Defendant Hartford acted with bad faith and culpability. "Where a plan administrator engages in an inadequate review of the beneficiary's claim or otherwise acts improperly in denying benefits . . . attorney fees are appropriate." *Shelby County Health Care Corp. v. Majestic Star Casino, LLC Group Health Benefit Plan*, 581 F.3d 355, 377 (6th Cir. 2009); *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 530 (6th Cir. 2008) (decision in bad faith where benefits terminated without "a single piece of current medical evidence regarding . . . physical condition as it relates to the occupation for which he had been deemed disabled"); *Moon*, 461 F.3d at 644 (finding culpable conduct where insurer relied upon a physician who ignored substantial evidence in the record); *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 809-10 (6th Cir. 2002) (finding culpability where a plan administrator denied disability benefits based solely on the opinion of a physician in its employ, the latter having neither examined the claimant nor considered

Case No. 1:10-CV-00750
Gwin, J.

substantial evidence in the record indicating that the claimant was disabled). Since Hartford conducted an inadequate review of the Plaintiff's medical records and based their conclusion on improper grounds, the Court finds this factor weighs in favor of an award of attorney's fees.

As to the second factor – the opposing party's ability to satisfy an award of attorney's fees – this factor weighs in favor of an award because Hartford is a large insurance corporation. *See Moon, 461 F.3d at 644*; *Foltice v. Guardsman Prods., 98 F.3d 933, 937 (6th Cir. 1996)*.

The Court finds that the third factor – the deterrent effect on future parties – also supports an award of fees. This case presents a not uncommon set of facts and will serve to deter future misconduct by other plan administrators, particularly since Hartford engaged in a facially inadequate review of the Plaintiff's medical records, rather than committing a simple mistake. *See Moon 461 F.3d at 645* (finding deterrence would be served by attorney's fees where administrator did ensure opinions on which it relied were based upon a thorough review of the record); *Gaeth, 538 F.3d at 532* (deterrence served where administrator terminated benefits "without any supporting medical evidence").

The fourth factor – whether the party requesting fees sought to confer a common benefit – does not support attorney's fees in this suit. This factor is rarely found to be met in cases brought by an individual plaintiff on his or her own behalf. *Gaeth, 538 F.3d at 532*; *Moon, 461 F.3d at 644*. Similarly, this case does not resolve any significant legal questions regarding ERISA. *See Foltice, 98 F.3d at 937*.

Finally, the Court finds that the fifth factor – the relative merits of the parties' positions – weighs in favor of awarding Plaintiff Kouns attorney's fees since the Court previously ruled that Defendant Hartford's decision to terminate benefits was arbitrary and capricious. *Smiljanich v.*

Case No. 1:10-CV-00750
Gwin, J.

*GMC*, 302 F. App'x 443, 452 (6th Cir. 2008) (award justified where plaintiff was prevailing party

and defendant acted culpably).

After weighing the factors enumerated above, the Court finds that the Plaintiff is entitled to

an award of attorney's fees.  The Plaintiff may make an application for fees to this Court.

*III.B  Repayment for Alleged Overpayment of Benefits*

In addition to the dispute over whether the Plaintiff's disability benefits were properly

terminated, the Hartford asserts a counter-claim against the Plaintiff, seeking repayment of funds paid

under the disability insurance policy.  [Doc. 5.]  The Defendant says that the insurance policy

provided that any Social Security income was deductible from the policy disability payments, and

that since the Plaintiff received an award of retroactive Social Security benefits in January 2010 that

she had been overpaid under the insurance policy by $26,221.89.

On January 12, 2010, Kouns began receiving disability benefits.  [A.R. 00211.]  Kouns was

awarded $906 per month, retroactively effective beginning on December 1, 2006, with an earnings

increased to $943 effective on January 1, 2007, and another increase to $946 effective January 1,

2008. [Doc. 22 at 15.]  Hartford has twice demanded $26,221.89 for alleged overpayment during the

period in which Kouns received long-term disability benefits, as well as retroactive Social Security

payments.  [A.R. 00123-00127.]  Kouns has not yet made any reimbursement payment to Hartford.

[Doc. 22 at 15.]  The parties do not dispute that under the disability insurance policy that Social

Security payments are deductible from any award of disability payments.[4/]  Additionally, the record

---

[4/] The insurance provision provides: "What is Your LTD Monthly Benefit and how is it calculated? . . . We will
calculate Your Gross LTD Monthly Benefit amount as follows: 1) Multiply Your Monthly Earnings by 60%. 2) The
maximum Gross LTD Monthly Benefit is $10,000. 3) Compare the answers from Item 1 and 2.  The lesser of these two
amounts if Your Gross LTD Monthly Benefit.  4) Subtract the Deductible Sources of Income from Your Gross LTD
Monthly Benefit.  The resulting figure is Your Net LTD Monthly Benefit.  [A.R. 00016.]
    "What are the Deductible Soruces of Income? 1) Disability benefits paid, payable, or for which there is a right
under: a) The Social Security Act, including any amounts for which Your dependents may qualify because of Your

Case No. 1:10-CV-00750
Gwin, J.

is clear that Hartford is entitled to be reimbursed for the amount of overpayment. [A.R. 00017; A.R. 00408.] The only real question is whether it is permissible for Hartford to bring this action under the provisions 29 U.S.C. § 1132.

ERISA § 502(a)(3)(B) provides that a fiduciary may bring a civil action "to obtain other appropriate equitable relief ... (ii) to enforce any provisions of ... the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). In *Sereboff*, the United States Supreme Court held that a claim for the reimbursement of overpaid funds may, in certain circumstances, qualify as an equitable lien under ERISA and an action for such recovery may be brought under § 502(a)(3)(B). *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 361-69 (2006). In *Sereboff*, the Court suggested that a repayment claim seeking enforcement of an equitable lien under ERISA must be based on an applicable plan provision that has "specifically identified a particular fund, distinct from [the beneficiary's] general assets . . . and a particular share of that fund to which [the fiduciary] was entitled." *Id.* at 364.

In 2007, the Sixth Circuit applied *Sereboff* to an ERISA case in which the fiduciary filed a counterclaim under the terms of a pan against the plan participant seeking reimbursement of benefits allegedly overpaid due to the participant's receipt of Social Security disability benefits. *Gilchrest v. Unum Life Ins. Co. of America*, 255 F. App'x 38 (6th Cir. 2007). In *Gilchrest*, the Sixth Circuit concluded that the reimbursement counterclaim was properly brought under § 502(a)(3)(B) of ERISA because the plan terms specifically permitted the fiduciary to recover overpaid benefits. *Id.* at 45-46. The Sixth Circuit further explained that the plan provisions satisfied the requirements for equitable relief in *Sereboff* because those provisions established "a right to recover from a specific fund distinct

---

Disability . . ." [A.R. 00017.]

Case No. 1:10-CV-00750
Gwin, J.

from Gilchrest's general assets, the fund being the overpayments themselves, and a particular share of that fund to which the plan was entitled, i.e., all overpayments due to the receipt of Social Security benefits, but not to exceed the amount of benefits paid." *Id.*

Because this Court concludes that the plan contains provisions regarding the right to reimbursement of overpaid benefits, § 502(a)(3)(B) of ERISA enables the fiduciary to bring a civil action to obtain equitable relief based upon those terms. 29 U.S.C. § 1132(a)(3)(B). In the instant case, as the Sixth Circuit found in *Gilchrest*, the specifically identified fund out of which the fiduciary may be entitled to equitable relief in the form of reimbursement appears to be the discrete amount of overpayments made due to the Plaintiff's receipt of Social Security benefits.

Accordingly, as there are no factual disputes regarding the right to or the amount of overpayment, the Court **GRANTS** the Defendants' motion for judgment as a matter of law on its counterclaim.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Plaintiff's motion for judgment on the administrative record and finds the termination of benefits to be arbitrary and capricious. The Plaintiff is also entitled to attorney's fees and may make an application to the Court. The Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion for judgment on the administrative record. The Court **DENIES** the Defendants' motion for judgment on the Plaintiff's claim and finds the termination of benefits to be arbitrary and capricious; the Court, however,

Case No. 1:10-CV-00750
Gwin, J.

**GRANTS** the Defendants' motion for judgment on its counterclaim for reimbursement.

      IT IS SO ORDERED.


Dated: January 19, 2011                 s/        *James S. Gwin*     
                                              JAMES S. GWIN
                                              UNITED STATES DISTRICT JUDGE